IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DORIS MAY MYSNYK,                )
                                 )
           Plaintiff,            )
                                 )
     v.                          )   Civil Action No. 15-269-E
                                 )
                                 )
CAROLYN W. COLVIN, ACTING        )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
           Defendant.            )

O R D E R

AND NOW, this 2nd day of March, 2017, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence,

nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues, in essence, that the residual functional capacity assessment ("RFC") as formulated by the Administrative Law Judge ("ALJ") in this case is not based on substantial evidence because: 1) the ALJ did not adequately evaluate Plaintiff's mental impairment by considering the impact of her mental illness on her ability to comply with treatment; and 2) the ALJ did not properly consider the opinion of Plaintiff's treating physician in formulating his RFC. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination of Plaintiff's non-disability.

First, the Court rejects Plaintiff's claim that the ALJ's RFC is not based on substantial evidence because he did not properly evaluate Plaintiff's mental impairment. More specifically, the Court finds that the ALJ did not err in failing to find that Plaintiff's mental illness caused her non-compliance with her treatment regimen. Upon close review of the record, the Court finds that the ALJ thoroughly discussed and analyzed Plaintiff's treatment history, including her evaluations during times of compliance and non-compliance with her treatment regimen, as well as during periods when she was experiencing external stressors. The Court also finds that the ALJ did not err in concluding that Plaintiff's credibility with regard to her alleged limitations was diminished by her periods of non-compliance, the reports of her doing well when she was compliant, and evidence of her drug and alcohol use. (R. 26).

For example, the ALJ noted that, beginning in January 2012, Plaintiff started treatment with Dr. Craig Rush, D.O., and that, because Plaintiff was eight months pregnant at the time, the doctor recommended that she wait until the birth of her child to begin treatment. (R. 24). Nevertheless, Plaintiff's mental status findings were fairly normal at that time and she was assigned a GAF score of 62. (R. 24). A few months later, Dr. Rush noted that Plaintiff was exhibiting angry, poor, irritable behavior, depressed and angry mood, and a mildly elevated anxiety state. (R. 24). As the ALJ explained, "After restarting medication, she had poor behavior, anxious mood, mildly elevated anxiety state, and blunted affect, but her motor activity, speech, sensorium, thought content, and thought flow were within normal limits." (R. 24). The doctor further noted, however, that Plaintiff's husband had recently been arrested and her children had been removed from her home, and that her Lithium levels had not yet been checked. (R. 24). Plaintiff's Lithium dosage was increased, and she had a completely normal mental status examination at her next visit with Dr. Rush. (R. 24). Nevertheless, Plaintiff's symptoms reappeared at the following visit when she reported having stopped her medications two months earlier because she did not like the way they had made her feel. (R. 24). The following month, Plaintiff reported having stopped taking her Seroquel, and although her motor activity, speech, sensorium, behavior, thought content, and thought flow all remained within normal limits, her mental status examination indicated anxious mood, mildly elevated anxiety state, and anxious affect. (R. 25). In October 2012, Plaintiff's examination again revealed

various problems, including anxious, angry mood and mildly elevated anxiety state, but she also tested positive for suboxone, hydrocodone, codeine and cocaine.  (R. 25).   Plaintiff had a normal examination at her next visit (other than anxious mood, affect that was "a little hyper," and mildly pressured speech), and she also had a completely normal mental status evaluation at her examination in March 2013 after having started Gabapentin.  (R. 25).   Again, Plaintiff's mental status examination remained normal in May 2013, and Dr. Sean Su, M.D., assigned her a GAF score of 62.  (R. 25).   Plaintiff then had mostly normal findings in July and September 2013, except for "tearful periods when she talked about going to jail and not being able to find a job."  (R. 25).   In December 2013, Dr. Su examined Plaintiff again and found that, although she had anxious and labile affect and fluctuating mood, she had coherent and goal-directed speech and showed no signs of markedly bizarre delusional thinking or significant obsessions or compulsions.  (R. 25).

In his decision, the ALJ noted that Plaintiff's treatment history is relatively conservative.  (R. 26).   He explained that Plaintiff had never been hospitalized, and he listed in detail the medications Plaintiff had been prescribed, including the circumstances surrounding the prescriptions and Plaintiff's periods of compliance and non-compliance with her treatment regimen.  (R. 26).   The ALJ stated that Plaintiff had indicated that her activities of daily living were intact, and she reported improvement after starting, and then adjusting, her medication.  (R. 25).   The ALJ also noted that Dr. Ryan Kobylinski, D.O., had recommended that Plaintiff attend Alcoholics Anonymous or Narcotics Anonymous, and that the doctor had indicated that he would consider starting Plaintiff on a mood stabilizer or antidepressant after a negative drug screen and period of abstinence.  (R. 26).

Thus, the ALJ concluded that Plaintiff's "treatment history shows that during periods of non-compliance and/or increased stress, her subjective complaints and mental status examination findings reflect an exacerbation of mood disturbance, but do not show symptoms of psychosis or disturbance of thought process."  (R. 26).   The ALJ further noted that Plaintiff "responds well to medication when she is compliant," and that when compliant, Plaintiff "reported doing well, and demonstrated completely normal mental status."  (R. 26).   Moreover, the ALJ found that Plaintiff's credibility as to her alleged limitations "is undermined by the normal mental status examination findings, the reports of doing well when she is compliant, the periods of non-compliance with frequent discontinuing of medication on her own," along with drug and alcohol use which was demonstrated in her urine drug screen.  (R. 26).

Moreover, nowhere in the record is there any indication that Plaintiff's failure to take her medication was due to her mental limitations.   Rather, the ALJ's decision and a review of the records indicate that Plaintiff was not complying with treatment for various reasons, including that she did not like the way medication made her feel, that she had changes of insurance, and that she had run out of her medication.  (R. 26).   Plaintiff cites no authority to support the suggestion that her non-compliance was due to mental issues, but instead merely speculates that this was the case.   Quite simply, the medical records, as discussed in great detail by the ALJ, do

not support any such argument. In fact, the Court finds that, in making his RFC assessment, the ALJ thoroughly discussed the evidence in the record, particularly Plaintiff's treatment history. The Court concludes that, upon careful review of the record and the ALJ's decision, substantial evidence supports the ALJ's evaluation of Plaintiff's credibility and the ALJ's RFC as a whole.

Second, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he gave "little" weight to the opinion of Plaintiff's treating psychiatrist without providing adequate discussion for having done so, and because he could point to no other physician opinion finding that Plaintiff was capable of performing work. Plaintiff's argument appears to be based, at least in part, on a mistaken understanding of the decision issued by the Court of Appeals for the Third Circuit in Doak v. Heckler, 790 F.2d 26 (3d Cir. 1986). As this Court explained in Doty v. Colvin, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014), and in various other recent decisions, the Doak opinion does not hold that an ALJ's RFC findings must be based on a specific medical opinion. Rather, the Court of Appeals in Doak held that nothing in the record of that case supported the finding by the ALJ that the plaintiff could perform certain work. The Court of Appeals in Doak never suggested that a finding of ability to perform certain work could only be made if an opinion in the record had clearly stated that the claimant could perform such work.

Additionally, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 416.927(d)(2), 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (S.S.A. 1996). "There is no legal requirement that a physician [must] have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006); see also Chandler, 667 F.3d at 362 (holding that every fact incorporated into an RFC does not have to have been found by a medical expert). In fact, the Circuit Court in Titterington clearly noted that "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." 174 Fed. Appx. at 11. Doak thus does not prohibit the ALJ from making an RFC assessment if no doctor has specifically made the same findings. See Hayes v. Astrue, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007). Furthermore, an RFC is properly based on all of the relevant evidence in the case record. See 20 C.F.R. § 416.945. An ALJ is not limited to choosing between competing opinions in the record, and may instead develop his own. See 20 C.F.R. § 416.946(c). Therefore, the ALJ is not required to rely only on a particular physician's opinion, and the RFC finding is actually an administrative—rather than a medical—determination. See 96-5p, 1996 WL 374183, *5.

In this case, the Court finds that the ALJ thoroughly discussed the evidence in the record and clearly explained his reasons for giving Dr. Su's opinion "little" weight in formulating Plaintiff's RFC. Specifically, after describing the various limitations that Dr. Su found with regard to Plaintiff, the ALJ explained that those limitations are "contradicted" by Plaintiff's normal mental status examinations (which were discussed in his decision at great length) and by

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

                                                                  s/ Alan N. Bloch
                                                                   United States District Judge

ecf:    Counsel of record

---

Plaintiff's relatively high GAF scores, including a GAF score of 62 assessed by Dr. Su himself in 2013.   (R. 27).   The Court also finds that the ALJ did not err in giving "some" weight to the opinion of the State agency medical consultant because that consultant had not had the opportunity to review Dr. Su's functional capacity assessment.   See Chandler, 667 F.3d at 361 (noting that there is always a time lapse between a consultant's report and an ALJ's decision, and that the "regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it").   The Court notes, further, that the agency consultant's report (which found that Plaintiff could perform simple, routine, repetitive tasks) does not demonstrate greater limitations than those found by the ALJ.   (R. 83-85).

       Based on the evidence of record, therefore, the Court finds that the ALJ thoroughly discussed his consideration of all the relevant evidence—including Plaintiff's course of medical treatment and the medical opinion evidence—and made an appropriate RFC determination, which includes various limitations stemming from Plaintiff's impairments.   The Court thus finds that substantial evidence supports the ALJ's ultimate determination that Plaintiff retains the ability to perform work consistent with his RFC finding.   Accordingly, the Court affirms.